WILMER J. HARRIS, State Bar No. 150407
SAMI N. KHADDER, State Bar No. 232216
SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN LLP
414 South Marengo Avenue
Pasadena, California 91101
Telephone: (626) 440-5969
Facsimile: (626) 449-4417
wharris@sdshhlaw.com
skhadder@sdshhlaw.com

Paula D. Pearlman, State Bar No. 109038
Shawna L. Parks, State Bar No. 208301
Matthew Strugar, State Bar No. 232951
DISABILITY RIGHTS LEGAL CENTER
919 South Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-1031
Facsimile: (213) 736-1428
paula.pearlman@lls.edu
shawna.parks@lls.edu
matthew.strugar@lls.edu

Attorneys for Plaintiff
RICKY SENGUPTA, individually, and on
behalf of the class of similarly situated individuals

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY SENGUPTA, individually, and on behalf of the class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF MONROVIA, a public entity; CITY OF MONROVIA POLICE DEPARTMENT, a public entity; and DOES 1 through 10, individuals sued in their individual capacities, inclusive,<br><br>Defendants. | CASE NO.  CV 09-0795 ABC (JWJx)<br><br>**Notice of Motion and Motion for Class Certification**<br><br>**[Declarations in Support and [proposed] Order filed concurrently]**<br><br>Date:     January 25, 2010<br>Time:     10:00 a.m.<br>Court:     680<br>Judge:     Hon. Audrey B. Collins |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on January 25, 2010, at 10:00 a.m., or at such other date and time as may be ordered by the Court, in Department 680 of the above-captioned Court, located at 255 Temple Street, Los Angeles, California 90012 Plaintiff Ricky Sengupta will and hereby does move for an order certifying a class of all persons who are deaf and hard of hearing and who have interacted or will or currently interact with Defendant City of Monrovia (the "City") or Defendant City of Monrovia Police Department (the "MPD") during investigation, arrest, booking or interrogation while in the MPD's custody and who were denied, are denied, or will be denied effective communication or necessary auxiliary aids.

This motion is made upon the grounds that the requirements of Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure have been satisfied. First, the putative class is too numerous, thus rendering impractical any joinder of the members of the class. Second, Mr. Sengupta has raised factual and legal issues that are common to the members of the proposed class. Third, Mr. Sengupta's claim that Defendants failed to communicate effectively with a deaf person is the same misconduct challenged by the class. Fourth, Mr. Sengupta and his counsel fulfill the adequacy of representation prong of Rule 23(a). Lastly, pursuant to Rule 23(b)(2), Mr. Sengupta alleges improper conduct by Defendants that is generally applicable to the class and seeks declaratory and injunctive relief for the class.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Plaintiff Rick Sengupta, the Declaration of Shawna L. Parks and the exhibits thereto, the Declaration of Wilmer Harris, the Declaration of Dr. Patrick Boudreault and the exhibits thereto, and such other evidence and authorities as may be presented to the Court in connection with the briefing or hearing of this motion.

1    This motion is made following conferences of counsel pursuant to L.R. 7-3,

2  which have taken place over the course of months through mail, telephonic

3  conference, and electronic mail, including but not limited to a detailed meet and

4  confer letter sent on August 17, 2009, and telephone conferences thereafter.

5

6  DATED: December 21, 2009            SCHONBRUN, DESIMONE, SEPLOW,
                                       HARRIS & HOFFMAN

7                                      DISABILITY RIGHTS LEGAL CENTER

8

9                                      By:_____/s/_____

10                                          MATTHEW STRUGAR
                                            Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Access Now, Inc. v. Ambulatory Surgery Center*,
  197 F.R.D. 522, 524...................................................................................11,17

*Armstrong v. Davis*,
  275 F.3d 849, 868-869 (9th Cir. 2001) ..................................................19,10,11,12

*Arnold v. United Artists Theatre Circuit, Inc.*,
  158 F.R.D. 439, 448, 450, 452 (N.D. Cal. 1994)...................................6,9,11,13,16

*Baby Neal for and By Kanter v. Casey*,
  43 F.3d 48, 57 (3d Cir.1994)...............................................................9,10,12

*Bates v. UPS*,
  204 F.R.D. 440 (N.D. Cal. 2001) ............................................................11

*Blackie v. Barrack*,
  524 F.2d 891, 901 (9th Cir. 1975) ...........................................................6

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*,
  249 F.R.D. 334, 345-347 (N.D. Cal. 2008) ............................................6,7,9

*Cervantez v. Celestica Corp.*,
  253 F.R.D 562, 569 (C.D. Cal. 2009) .......................................................7

*Clarkson v. Coughlin*,
  898 F.Supp. 1019 (S.D.N.Y.,1995)..........................................................11

*Comer v. Cisneros*,
  37 F.3d. 775, 796 (2d Cir. 1994)............................................................16

*Cox v. American Cast Iron Pipe Co.*,
  784 F.2d 1546, 1553 (11th Cir. 1986) .......................................................8

*Cypress v. Newport News General and Non-Sectarian Hosp. Ass'n*,
  375 F.2d 648, 653 (4th Cir. 1967) ...........................................................6

*Deposit Guar. Bank v. Roper*,
  445 U.S. 326 (1980)..........................................................................13

*Diamond v. Los Angeles Police Department*,
  Case No.: CV-00-11110 ABC (AIJx)........................................................14

*Doe, et al. v. Unocal Corp., et al.*,
  Case No. CV 96-6959-RSWL .................................................................15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156, 178; 94 S. Ct. 2140; 40 L. Ed. 2d 732 (1974)..............................6

*Elliot v. Weinberger*,
  564 F.2d 1219, 1228, 1229 (9th Cir. 1977), *aff'd in relevant part, rev'd in part*, 442
  U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979)......................................17,18

*Guckenberger v. Boston University*,
  957 F.Supp. 306, 326-327 (D.Mass.1997).................................................11

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643, 647-648 (C.D. Cal. 1996)..................................................7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1019 (9th Cir. 1998) ...................................................................9,12

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497, 508 (9th Cir. 1992) ...........................................................................12

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) ......................................................................................7

*Holmes v. Continental Can Co.*,
    706 F.2d 1144, 1155 (11th Cir. 1983) ......................................................................16

*In re Apartheid Cases*,
    S.D.N.Y., Case No. 02 Civ. 4712 .............................................................................15

*In re Beer Distrib. Antitrust Litig.*,
    188 F.R.D. 557, 562 (N.D. Cal. 1999) ........................................................................8

*In re Cooper Companies Inc. Securities Litigation*,
    254 F.R.D. 628, 634 (C.D. Cal. 2009) ........................................................................7

*In re Northern District of California, Dalkon Shield, IUD Prods. Liab. Litig.*,
    693 F.2d 847, 855 (9th Cir. 1982) .............................................................................13

*Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*,
    102 F.R.D. 457, 462 (N.D. Cal. 1983) ........................................................................9

*John Roe, et al.v. Bridgestone Corp et al.*,
    Southern District of Indiana No. 1:06-cv-0627-DFH-JMS ......................................15

*Jordan v. Los Angeles County*,
    669 F.2d 1311, 1320, 1321, 1323 (9th Cir. 1982), vacated on other grounds, 459 U.S.
    810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982) .............................................6,8,9,11,15

*LaDuke v. Nelson*,
    762 F.2d 1318, 1332 (9th Cir. 1985) ...........................................................................9

*Lauderdale et al., v. City of Long Beach et al.*,
    Case No.: CV-08-979 (JWJx,) ..................................................................................14

*League of Martin v. City of Milwaukee*,
    588 F. Supp. 1004, 1036 (E.D. Wisc. 1984) ............................................................13

*Lynch v. Rank*,
    604 F. Supp. 30, 38-39 (N.D. Cal. 1984) .................................................................17

*Navarro-Ayala v. Hernandez-Colon*,
    951 F.2d 1325, 1336-37 (1st Cir. 1991) ...................................................................17

*O'Connor v. Boeing North American, Inc.*,
    197 F.R.D. 404, 412 (C.D.Cal. 2000) .......................................................................17

*Phillips v. Joint Legislative Com.*,
    637 F.2d 1014, 1022 (5th Cir. 1981) ...........................................................................8

*Presbyterian Church of Sudan, et al. v. Talisman Energy, Inc., and the Republic of Sudan*,
    United States Court of Appeals, Second Circuit, Case No. 07 0016 ........................15

*Roper v. Conserve, Inc.*,
    578 F.2d 1106 (5th Cir. 1978) ...................................................................................13

*Siddiqi v. Regents of the University of California*, No. C99-0790 SI, 2000 WL 3319045
    (N.D. Cal. Sept. 6, 2000) ...........................................................................................11

*Stolz v. United Brotherhood of Carpenters*,
    620 F.Supp. 396, 408 (D. Nev. 1985) ...................................................................................18

*V.L. et al v. Wagner et. al.*,
    Case No. 4:09-cv-04668-CW (N.D. Cal.) ..........................................................................14

*Valenzuela v. County of Los Angeles et al.*,
    Case No. CV-02-9092 (JWJx) ..............................................................................................14

*Walters*,
    145 F.3d 1047 ...........................................................................................................................17

## STATUTES AND RULES

29 U.S.C. § 794 ..............................................................................................................................10

42 U.S.C. § 12102(2) ....................................................................................................................11

42 U.S.C. §12131 .......................................................................................................................1,10

California Civil Code § 51 ............................................................................................................10

California Civil Code § 54 ............................................................................................................10

California Government Code §11135 ...........................................................................................10

Federal Rules of Civil Procedure Rule 23 ...................................................................................14

Federal Rules of Civil Procedure Rule 23(a) ..............................................................5,6,8,13,16

Federal Rules of Civil Procedure Rule 23(a)(1) ......................................................................6,8

Federal Rules of Civil Procedure Rule 23(a)(2) ...........................................................................9

Federal Rules of Civil Procedure Rule 23(a)(3) .........................................................................11

Federal Rules of Civil Procedure Rule 23(b) ...........................................................................6,16

Federal Rules of Civil Procedure Rule 23(b)(2) .........................................................2,6,16,17,18

Federal Rules of Civil Procedure Rule 23(c)(2) .........................................................................17

Federal Rules of Civil Procedure Rule 23(c)(2)(A) ....................................................................18

Federal Rules of Civil Procedure Rule 23(d) ..............................................................................17

Federal Rules of Civil Procedure Rule 23(g)(1)(A) ....................................................................14

Federal Rules of Civil Procedure Rule 30(b)(6) ...........................................................................5

## OTHER AUTHORITIES

Conte & Newberg, *Newberg on Class Actions* §3.5 (4th ed. 2009) ..............................................8

Conte & Newberg, *Newberg on Class Actions* §5:4 (4th ed. 2009) ...........................................17

Conte & Newberg, *Newberg on Class Actions* §8:05 (4th ed. 2009) .........................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    Introduction

The City of Monrovia Police Department ("MPD") has not provided a sign language interpreter to any person who is deaf for at least ten years.  Moreover, the MPD did not have any written policy with respect to communicating with deaf or hard of hearing individuals until a few weeks ago, and even its recently promulgated policy fails to provide sufficient guidance to officers regarding effective communication with people who are deaf or hard of hearing. This action seeks to remedy this systemic failure.

Under the Americans with Disabilities Act, (42 U.S.C. §12131 *et seq*.), ("ADA") and other federal and state disability law, Defendants are required to provide effective communication to individuals in their custody during investigation, arrest, booking or interrogation.  Despite these obligations, Defendants City of Monrovia ("City") and MPD (collectively referred to as "Defendants") failed to provide effective communication to Plaintiff Ricky Sengupta's ("Mr. Sengupta") during his arrest, booking and interrogation by Defendants.  Mr. Sengupta alleges Defendants fail to provide effective communication to all individuals who are deaf or hard of hearing, including himself, who come into contact with the MPD, thereby discriminating against them in violation of federal and state law. Mr. Sengupta also alleges that Defendants have failed to properly supervise and train their officers and other employees to effectively communicate with individuals who are deaf and hard of hearing during investigation, arrest, booking, interrogation, and while otherwise in MPD's custody or otherwise interacting with MPD, also in violation of federal and state law.

Mr. Sengupta seeks certification of a class of individuals aggrieved by these uniform failures to ensure effective communication.  The class Mr. Sengupta seeks to certify is defined as all persons who are deaf and hard of hearing and who have interacted or will or currently interact with Defendant City of Monrovia or

1  Defendant City of Monrovia Police Department during investigation, arrest, booking
2  or interrogation while in the MPD's custody and who were denied, are denied, or
3  will be denied effective communication or necessary auxiliary aids.

4      The class action component of this case seeks only declaratory and injunctive
5  relief on behalf of the putative class, and is therefore brought under Federal Rule of
6  Civil Procedure 23(b)(2).[1] This action, based upon the class action allegations
7  contained in paragraphs 18-26 of the Complaint, and the accompanying
8  Memorandum of Points and Authorities, declarations, and exhibits support
9  certification of the proposed class, presents the *prima facie* elements necessary to
10  conclude that this action meets all the requirements of, and is maintainable as a class
11  action under Federal Rule of Civil Procedure 23(b)(2).

12  **II.    Statement of Facts**

13      **A. Defendants Failed To Ensure Effective Communication With Mr.**
14      **Sengupta Throughout The Course Of A Traffic Stop, Arrest And**
15      **Detention.**

16      Mr. Sengupta is deaf and primarily communicates through American Sign
17  Language.  *See* Declaration of Rick Sengupta ("Sengupta Decl.") at ¶ 2. On February
18  7, 2008, Mr. Sengupta was driving at nighttime, planning to visit a friend when MPD
19  officers ordered him to pull over.  Sengupta Decl. at ¶ 4.  After Mr. Sengupta pulled
20  over, an unidentified female officer approached his car.  *Id.* When Mr. Sengupta
21  rolled down his window, the officer spoke to Mr. Sengupta. *Id.* Mr. Sengupta pointed
22  at his ear in an attempt to communicate to the officer that he is deaf.  *Id.*  Mr.
23  Sengupta repeated the gestures several times. *Id.*

24      The officer used gestures to demand that Mr. Sengupta produce his driver's
25  license. *Id.* at ¶ 5. After the female officer looked at his license, she then tapped on
26  the rear window and appeared to mouth something to Mr. Sengupta while shaking a

27  ───────────────
[1] Plaintiff, in his individual capacity, also seeks damages.

28

1  finger at him. *Id*. Mr. Sengupta again attempted to apprise the officer of his deafness
2  and his inability to understand what was going on by gesturing and pointing at his
3  ear. *Id*.

4        The MPD officer gestured for Mr. Sengupta to get out of his car, which he did.
5  *Id*. at ¶ 6.  Mr. Sengupta was frisked and ordered to sit on the ground.  *Id*. at ¶ 6-7.
6  Additional MPD officers arrived on the scene.  *Id*. at ¶ 7. A male MPD officer wrote
7  the words "Gang Member" on a piece of paper and handed it to Mr. Sengupta.  *Id*. at
8  ¶ 7.  Mr. Sengupta understood the officer to be asking if he was a member of a gang.
9  *Id*. Mr. Sengupta wrote "No" and then wrote "Interpreter" on the piece of paper.  *Id*.
10  Mr. Sengupta pointed to the word "Interpreter" to indicate he required a qualified
11  sign language interpreter to communicate effectively with the MPD officers.  *Id*.

12        At some point a male MPD officer pointed at Mr. Sengupta's car.  *Id*. at ¶ 8.
13  Mr. Sengupta understood the MPD officer to be asking if he owned the car, and
14  nodded yes.  *Id*.  The MPD officer then proceeded to search Mr. Sengupta's vehicle
15  despite never procuring his consent for such a search.  *Id*.  Mr. Sengupta continued to
16  point to the word "Interpreter" in an attempt to secure an ASL interpreter.  *Id*. at ¶ 9.
17  Mr. Sengupta was eventually handcuffed and arrested.  *Id*. at ¶ 10.  The MPD
18  officers made no effort to exchange notes or otherwise convey to Mr. Sengupta the
19  reason(s) he was taken into custody.  *Id*.  Mr. Sengupta was then transported to the
20  Monrovia Police Station.  *Id*.

21        The pattern of ineffective communication with Mr. Sengupta continued
22  unabated at the police station.  Mr. Sengupta was booked and placed into a holding
23  cell without the officers attempting to communicate with him either in writing or
24  gesture.  *Id*. at ¶ 11.  MPD officers twice attempted to interrogate Mr. Sengupta
25  without the benefit of a qualified interpreter.  *Id*. at ¶ 11-12.  Both times, Mr.
26  Sengupta expressly requested an interpreter through writing "Interpreter" on a piece
27  of paper.  *Id*.  Once again, he was not provided an interpreter.  *Id*.  Mr. Sengupta was
28

never informed of the availability of auxiliary aids, such as an ASL interpreter or phone calls via TDD/TTYs.  *Id.* at ¶ 13.

Mr. Sengupta was released after spending a night in custody.  *Id.* at ¶ 14. After his release Mr. Sengupta discovered he had been charged with a misdemeanor for possession of a deadly weapon for a set of brass knuckles the MPD officers found when they searched his car, as well as charges for turning without due caution or signaling and for having tinted windows.  *Id.*  All of the charges against Mr. Sengupta were dismissed by the Los Angeles County Superior Court on or about August 11, 2009. *Id.* at ¶ 15.

Mr. Sengupta brings this action on his own behalf and on behalf of all persons who are deaf of hard of hearing who have interacted, currently interact, or will interact with the MPD and who were denied, are denied, or will be denied effective communication or necessary auxiliary aids.

**B. These Violations Stem From A Centralized Failure To Ensure Effective Communication with This Population.**

These violations stem from a central failure on the part of the Monrovia Police Department to ensure that officers effectively communicate with people who are deaf or hard of hearing. There was no formal policy regarding effective communication for people who are deaf or hard of hearing in effect at the time of Mr. Sengupta's arrest.

For example, in response to Mr. Sengupta's requested production of, *inter alia*, "All DOCUMENTS RELATING TO [Defendants'] POLICIES … for providing EFFECTIVE COMMUNICATION for ANY PERSON who is deaf or hard of hearing," Defendants stated they were "unable to locate any documents relating to the City of Monrovia Police Department's policies concerning the detention, arrest and interrogation of individuals who are deaf and/or hard of

hearing."[2] *See* Defendants' Response to Request for Production of Documents, attached to Declaration of Shawna L. Parks ("Parks Decl.") as Exh. C at 2:3-5, 2:26-3:2.

Monrovia Police Department's designee produced pursuant to Fed. R. Civ. Proc. 30(b)(6), Captain Enrico Miglia, testified that the MPD instituted a written policy for effective communication with people who are deaf or hard of hearing sometime in *November of 2009*. *See* Excerpts of Deposition Transcript of Ernesto Miglia, attached to Parks Decl. at Ex. D at 39:2-17. Captain Miglia further testified that, prior to November of 2009, the policies for effective communication with people who are deaf or hard of hearing were "kind of fragmented. In other words, they were given in a lot of different methods, whether it be though training that an officer would receive in the academy, through briefing topic training, through periodicals, [or] through word of mouth from supervisors and other experienced people." *Id.* at 42:23-43:11. Even this recently produced "policy" fails to accurately convey the rights of people who are deaf or hard of hearing under applicable statutes.

Not surprisingly in light of this lack of clear department direction or policy, Captain Miglia further testified that he was unaware of the MPD providing a sign language interpreter to an individual who was deaf or hard of hearing at any time in the last ten years. *Id.* at 28:12-23.

## III. The Court Should Certify the Proposed Class

Mr. Sengupta seeks class certification to ensure that any relief obtained extends to the large group of individuals who are deaf or hard of hearing, and who have interacted, currently interact, or will interact with Defendant MPD officers.

Federal Rule of Civil Procedure 23(a) requires that a party moving to certify a class show that: (1) the proposed class is so numerous that joinder of all its members

---

[2] This response comports with the Monrovia Police Department's Response to a public records act request issued by Mr. Sengupta prior to initiating suit. *See* Public Records Act Request to Monrovia Police Department, Exh. E to Parks Decl.

would be impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative are typical of the class; and (4) the class representative will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). In addition to these requirements, the party moving for class certification must also show that the class is maintainable under one of the subdivisions of Rule 23(b). *See* Fed. R. Civ. P. 23(b). Here, Mr. Sengupta seeks certification under Rule 23(b)(2).

The decision whether to certify a class is committed to the district court's discretion. However, "[t]he court is bound to take the substantive allegations of the complaint as true . . . ." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). While a court must determine that plaintiffs have alleged facts sufficient to meet Rule 23 requirements, a court does not consider whether plaintiffs will ultimately prevail on their claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178; 94 S. Ct. 2140; 40 L. Ed. 2d 732 (1974) (citation omitted); *Jordan v. Los Angeles County*, 669 F.2d 1311, 1321 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810, 103 S. Ct. 35, 74 L. Ed. 2d 48 (1982). As set forth below, Mr. Sengupta satisfies all four requirements of Rule 23(a) and the requirements of Rule 23(b)(2).

### A. Mr. Sengupta Satisfies the Requirements of Rule 23(a)

#### 1. The Numerosity Requirement Is Satisfied Because There Are Far Too Many Members of the Class to Make Joinder Practicable

Numerosity is satisfied if joinder of all class members would be "impracticable." *See* Fed. Civ. P. 23(a)(1). No specific minimum number of class members is required as a matter of law to maintain a class action. *See Cypress v. Newport News General and Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 persons numerous enough to constitute a class); *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal.

2008) (noting that there is "no bright-line rule as to how many class members are required to be sufficiently numerous"). Where "general knowledge and common sense indicate that [the plaintiff class] is large, the numerosity requirement is satisfied." *Cervantez v. Celestica Corp.*, 253 F.R.D 562, 569 (C.D. Cal. 2009).  The Central District of California has recently held that the "numerosity is presumed where plaintiff class contains forty or more members."  *In re Cooper Companies Inc. Securities Litigation*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).  Moreover, a "plaintiff does not need to show that it would be impossible to join every class member, as 'impracticability' does not mean 'impossibility.'"  *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647-648 (C.D. Cal. 1996) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964)). Here, the Plaintiff class more than meet the numerosity requirement.

Courts often appropriately consider statistical and census data in determining whether the numerosity requirement has been met.  *Californians for Disability Rights*, 249 F.R.D. at 347 (finding numerosity satisfied based on extrapolation from statistical and census data).  The U.S. Census Bureau estimates that .41% of the population in California is unable to hear a normal conversation (Deaf), and that 4.87% has difficulty hearing a normal conversation (Hard of Hearing).  *See* Declaration of Dr. Patrick Boudreault ("Boudreault Dec.") at ¶ 9; 1990 U.S. Census Disability Data for California, Table 3, Exh. B to Boudreault Decl.  Other studies show similar or significantly higher rates of deafness and difficulty hearing among the national and California population. *See* Boudreault Decl. at ¶¶ 10-11, 14 According to the American Community Survey conducted by the United States Census Bureau, the estimated total population of Monrovia in 2006 was 37,155. *See* Boudreault Decl. at ¶ 15; U.S. Census Bureau, 2006 American Community Survey, Monrovia, California, Exh. F to Boudreault Decl. Based on those statistics, between 1,395 and 1,809 who live in the City of Monrovia would either be unable to, or have

difficulty hearing a normal conversation.[3] These numbers do not account for the 430,000 to 470,000 people with hearing disabilities who live in Los Angeles County who may travel through or visit the City and who may interact with the MPD. *See* Boudreault Decl. at ¶ 20-21.

These numbers, by themselves, are sufficiently large to make joinder impracticable. *See* 1 Conte & Newberg, *Newberg on Class Actions* §3.5 (4th ed. 2009) (the plaintiff whose class is 40 or greater should meet the test of Rule 23(a)(1) on that fact alone); *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (same). It is beyond dispute that the proposed class satisfies Rule 23(a)'s numerosity requirement. Indeed, courts have certified classes many times smaller. *See, e.g., In re Beer Distrib. Antitrust Litig.*, 188 F.R.D. 557, 562 (N.D. Cal. 1999) (numerosity satisfied where record evidenced "more than twenty-five").

Moreover, joinder is or will be impracticable because there are class members who will interact with the MPD and whose identities cannot readily be ascertained. In this instance, this is particularly true for future class members, because people who are deaf or hard of hearing are fully integrated in every aspect of our social and work environments and are likely to travel in and through the City of Monrovia and come in contact with the MPD. *See Jordan*, 669 F.2d at 1320 (9th Cir. 1982); *Phillips v. Joint Legislative Com.*, 637 F.2d 1014, 1022 (5th Cir. 1981) (where proposed class includes future members whose joinder is necessarily impracticable, the requirement of Rule 23(a)(1) is met). For these reasons, Mr. Sengupta has met the numerosity requirement.

---

[3] These figures are supported by more recent national data on hearing disabilities. According to the U.S. Census, 3.4% of people over age 15 have difficulty hearing, while 11.2% of the population over 65 has difficulty hearing. *See* Boudreault Decl. at ¶ 18; Americans with Disabilities 2005, Issued December 2008, Table B-1, Exh. G to Boudreault Decl. Even using these slightly lower figures, nearly 1,400 people in the City of Monrovia have difficulty hearing. Bodreault Decl. at ¶ 18.

2.     **The Commonality Requirement Is Satisfied Because Mr. Sengupta Raises Factual and Legal Issues That Are Common to the Members of the Proposed Class.**

Rule 23(a)(2) requires that there be either questions of fact or law common to the members of the proposed class.  Indeed, a common legal issue and a core of common operative facts support maintenance of a class action, even when there are factual variations among the claims of the putative class members: "All questions of fact and law need not be common to satisfy [Rule 23(a)(2)].  The existence of shared legal issues with divergent factual predicates is sufficient . . . ." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Jordan*, 669 F.2d at 1320 (not every question of law or fact need be common to every member of the class).  As such, this requirement can be met where only one of the many issues of law or fact are common to all class members.  *See Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 462 (N.D. Cal. 1983).

In a civil-rights suit, commonality may be satisfied by a challenge to system-wide practice or policy that affects all class members.  *Armstrong*, 275 F.3d at 868, citing *La Duke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985).  Thus, commonality is established "'by the alleged existence of common discriminatory practices.  The actions of the defendant need not affect each member of the class in the same manner.'"  *Arnold*, 158 F.R.D. at 448 (citation omitted). *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("[B]ecause they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)").  Indeed, "[c]ases challenging an entity's policies and practices regarding access for the disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2)."  *Californians for Disability Rights*, 249 F.R.D. at 345.

The instant lawsuit falls squarely within that category of cases identified by the *Armstrong* court as an example of commonality—a civil rights suit challenging

system-wide practices and policies affecting all class members.  Mr. Sengupta's class action seeks only declaratory and injunctive relief, which, as many courts have noted, generally are considered to present common questions.  *Baby Neal*, 43 F.3d at 57 ("[B]ecause they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions by their very nature often present common questions.").

Here, the class members share common questions of fact concerning the policies and practices of the Defendants regarding individuals who are deaf or hard of hearing, and who have interacted or will or currently interact with the MPD during investigation, arrest, booking or interrogation while in the MPD's custody and Defendants' failure to effectively communicate with, provide appropriate auxiliary aids to, or give primary consideration to the type of auxiliary aids and services requested by, these individuals.  Complaint at ¶ 26, attached as Exh. B to Parks Decl.

Class members also share common questions of law concerning the legality of Defendants' policies and practices regarding individuals who are deaf or hard of hearing including whether they violated Title II of the Americans with Disabilities Act (42 U.S.C. §12131 *et seq.*), Section 504 of the Rehabilitation Act (29 U.S.C. § 794 *et seq.*), California disability laws (Cal. Civil Code § 51 *et. seq.*; Cal. Civil Code § 54 *et. seq.*; Cal. Gov. Code § 11135 *et seq.*) by failing to effectively communicate with individuals who are deaf or hard of hearing, by failing to provide the MPD officers and employees with appropriate training regarding the rights of individuals who are deaf or hard of hearing to receive effective communication, and by failing to adopt and implement policies and procedures to ensure effective communication. *See id.*  Those common questions are sufficient to establish commonality.

Under these theories many ADA and Rehabilitation Act cases have been certified, including but not limited to, classes of deaf or hard of hearing individuals who are alleging discrimination.  *See Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001) (class of prisoners and parolees with sight, hearing, learning,

developmental and mobility disabilities); *Bates v. UPS*, 204 F.R.D. 440 (N.D. Cal.

2001) (class in employment discrimination case of employees of UPS who use sign

language as a primary means of communication due to hearing loss or limitation);

*Siddiqi v. Regents of the University of California*, No. C99-0790 SI, 2000 WL

3319045 (N.D. Cal. Sept. 6, 2000) (class of students who are deaf or hard-of-

hearing); *Access Now, Inc. v. Ambulatory Surgery Center*, 197 F.R.D. 522, 524

(S.D. Fla. 2000) (nationwide class of all people with "disabilities as that term has

been defined by 42 U.S.C. § 12102(2)" who were or are "entitled to the full and

equal enjoyment of the goods, services, programs, facilities, privileges, advantages

or accommodations of any of the Defendants' Facilities, because of their respective

disabilities"); *Guckenberger v. Boston University*, 957 F.Supp. 306, 326-27

(D.Mass.1997) (class of students with learning disabilities); and *Clarkson v.*

*Coughlin*, 898 F.Supp. 1019 (S.D.N.Y., 1995) (class of people who are deaf or hard

of hearing inmates in correctional setting who had been discriminated against).

### 3. The Typicality Requirement Is Satisfied Because Mr. Sengupta's Claim That Defendants Fail to Communicate Effectively With Individuals Who Are Deaf or Hard of Hearing Is the Same Misconduct Challenged by the Class

Rule 23(a)(3) requires that the claims of the representative plaintiff be typical

of the claims of the class.  *See* Fed. R. Civ. P. 23(a)(3).  A named plaintiff's claims

are typical if they "stem[] from the same event, practice or course of conduct that

forms the basis of the class claims and [are] based upon the same legal or remedial

theory."  *Jordan*, 669 F.2d at 1321; *see also Armstrong v. Davis*, 275 F.3d 849, 869

(9th Cir. 2001) ("[W]e do not insist that the named plaintiffs' injuries be identical

with those of the other class members, only that the unnamed class members have

injuries similar to those of the named plaintiffs and that the injuries result from the

same, injurious course of conduct."); and *Arnold*, 158 F.R.D. at 449 ("The claims of

the named plaintiffs need not be identical to the claims of the class; they need only arise from the same remedial and legal theories.").

As the Ninth Circuit stated in *Armstrong v. Davis*, that "we do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." 275 F.3d 849, 869 (9th Cir. 2001)(emphasis added) *citing Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In other words, "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal*, 43 F.3d at 58.  Representative claims therefore satisfy the typicality requirement "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 2008). "Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal*, 43 F.3d at 58.

Here, Mr. Sengupta is a person who is deaf who interacted with the MPD and is likely to interact with the MPD in the future. Mr. Sengupta was pulled over, detained, arrested, and interrogated by the MPD.  He was unable to communicate effectively with the MPD because of their failure to provide him with an interpreter. *See* Sengupta Decl. at ¶ 2-16.

Mr. Sengupta challenges the same course of conduct on the same legal grounds as would be challenged by the class as a whole.  Mr. Sengupta, like the proposed class, alleges violations of federal and state antidiscrimination statutes based on failure to 1) communicate with individuals who are deaf or hard of hearing in as effective a manner as they do with other members of the general public, 2) enforce and adopt appropriate policies and procedures to ensure that MPD officers

provide effective communication, and 3) provide MPD deputies with appropriate training regarding the rights of individuals who are deaf or hard of hearing to receive effective communication.  Complaint at ¶¶ 21-23, 48-55, attached as Exh. B to Parks Decl.  Accordingly, the typicality requirement is satisfied.  *See Arnold*, 158 F.R.D. at 450 (claims of named plaintiffs, who attended numerous different theaters in which they allege accommodations violate ADA, are typical).

### 4.    The Class Is Adequately Represented by Mr. Sengupta and Class Counsel.

Lastly, Rule 23(a) requires that the representative parties must fairly and adequately protect the interests of the class.  "Adequacy of representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between the representatives and the absentees, and the unlikelihood that the suit is collusive."  *In re Northern District of California, Dalkon Shield, IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982).

As set forth above in the discussion of the commonality and typicality requirements, Mr. Sengupta shares the same interests of declaratory and injunctive relief as the proposed class members.  Mr. Sengupta's individual pursuit of compensatory damages for his injuries has not affected and will not interfere with the parties' pursuit of a class-wide declaratory and injunctive relief.  Sengupta Decl. at ¶ 30. It is not uncommon for individually named plaintiffs in a civil rights action to receive compensation for alleged damages while at the same time representing a plaintiff class for the purpose of obtaining declaratory and injunctive relief.  *See, e.g., Roper v. Conserve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), *aff'd on other grounds sub nom Deposit Guar. Bank v. Roper*, 445 U.S. 326 (1980) (defendant's payment in full of two class representatives' claims did not render class representative inadequate or defeat class certification); *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004, 1036 (E.D. Wisc. 1984) (proposed settlement properly included individual relief for a named plaintiff).

Mr. Sengupta is represented by the Disability Rights Legal Center ("DRLC") and Schonbrun, DeSimone, Seplow, Harris & Hoffman.[4]  The DRLC has litigated disability rights cases for more than thirty four years and specializes in impact litigation affecting the disability community.  The DRLC's mission is to advocate for the rights of people with disabilities and to enhance the public's interest in and awareness of those rights.  Parks Decl. at ¶ 3.  It is a highly respected organization with experienced attorneys who litigate disability cases.  *See e.g., id.* at ¶ 4.  Counsel at the DRLC are recognized experts in civil rights, and more specifically disability rights law.  For example, DRLC is counsel for the proposed class in *V.L. et al v. Wagner et. al.*, Case No. 4:09-cv-04668-CW (N.D. Cal.) in which the court recently issued a preliminary injunction halting termination or reduction of in home support services to more than 130,000 seniors and people with disabilities in California.  *See also* Parks Decl. at ¶ 4 (containing additional examples of DRLC's impact work).  It has also been class counsel in similar class actions cases that this Court has presided over: *Diamond v. Los Angeles Police Department*, Case No.:  CV-00-11110 ABC (AIJx) (Central Dist. California) (case addressing failure to provide effective communication for people who are deaf and hard of hearing by Los Angeles Police Department); and *Valenzuela v. County of Los Angeles et al.*, Case No. CV-02-9092 (JWJx) (class action settlement addressing failure to provide effective communication for people who are deaf and hard of hearing by Los Angeles Sheriff's Department).  *See* Parks Decl. at ¶ 6.  The DRLC has another motion pending before this Court in *Lauderdale et al., v. City of Long Beach et al.*, Case

---

[4] Rule 23 provides that "unless a statute provides otherwise, a court that certifies a class must appoint class counsel."  See Fed. R. Civ. P. 23(g)(1)(A).  In appointing class counsel, the court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law, and (iv) the resources counsel will commit to representing the class."  See id. at (1)(A).  Here, Plaintiffs propose that Disability Rights Legal Center and Schonbrun, DeSimone, Seplow, Harris & Hoffman be appointed class counsel.

No.: CV-08-979 (JWJx,), to certify a class for the purpose of settlement that is substantially similar to the class sought in this action.  *See* Parks Decl. at ¶ 6.

Counsel at Schonbrun, DeSimone, Seplow, Harris & Hoffman have extensive experience with civil rights class actions.  *See* Harris Decl. at ¶ 1-6.  For example, Schonbrun, DeSimone, Seplow, Harris & Hoffman was or is lead counsel on a number of groundbreaking human rights class actions, including *Doe, et al. v. Unocal Corp., et al*. (United States District Court, Central District of California, Case No. CV 96-6959-RSWL) (Unocal was sued for human rights abuses committed during the construction of an oil pipeline in Myanmar); *In re Apartheid Cases* (S.D.N.Y., Case No. 02 Civ. 4712) (suing companies who sponsored the Apartheid regime in South Africa); *Presbyterian Church of Sudan, et al. v. Talisman Energy, Inc., and the Republic of Sudan* (United States Court of Appeals, Second Circuit, Case No. 07 0016) (suing Talisman Oil for its assistance in human rights abuses committed by the Sudanese government), and *John Roe, et al. v. Bridgestone Corp., et al.* (Southern District of Indiana No. 1:06-cv-0627-DFH-JMS) (suing for human rights abuses committed on Bridgestone's rubber plantation in Liberia).  *See* Harris Decl. at ¶ 6.  Schonbrun, DeSimone, Seplow, Harris & Hoffman is currently litigating seven class actions and has recently settled three class actions for a total of more than twenty-two million dollars.  *See id.* at ¶ 5.

Furthermore, all of Mr. Sengupta's counsel maintain sufficient resources and expertise to maintain this action.  *See* Parks Decl. at ¶ 14; Harris Decl. at ¶ 7; *see Jordan*, 669 F.2d at 1323 (holding that adequacy of counsel can be met by showing that the named plaintiffs' attorneys are qualified, experienced, and generally able to conduct litigation). Mr. Sengupta shares the proposed class's common interest in improving MPD's provision of effective communication to people who are deaf or hard of hearing.  *See* Sengupta Decl. ¶ 20.  Mr. Sengupta and his counsel are competent to represent the interests of the class.  Sengupta Decl. at ¶ 20; Parks Decl. at ¶ 4-14; Harris Decl. at ¶ 1-6.  Mr. Sengupta and his counsel have and will

adequately and fairly represent the interests of the class, and as such, all elements of Rule 23(a) are met in this case.

### B.    Certification Under Rule 23(b)(2) Is Appropriate

In addition to the four requirements of Rule 23(a), Mr. Sengupta must also satisfy the requirements contained in at least one of the subdivisions of Rule 23(b). Mr. Sengupta moves for certification under Rule 23(b)(2), which is satisfied when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . ." Fed. R. Civ. P. 23(b)(2).

Mr. Sengupta alleges that Defendants City of Monrovia and the MPD have failed to provide individuals who are deaf or hard of hearing with communication aids thus generally denying class members equal access effective communication with the MPD.  The case seeks injunctive and declaratory relief to rectify that problem through modifying MPD's policies and procedures to ensure more effective communication with people who are deaf or hard of hearing in the future.  Complaint at ¶ 39, attached as Exh. B to Parks Decl.  Moreover, Mr. Sengupta, on his own behalf and on behalf of the class, brings this action to vindicate his right to be free from discrimination under the ADA and other civil rights laws, based on an alleged pattern and practice of discriminatory conduct affecting the entire proposed class. *Id.* at ¶ 24.

Suits brought to vindicate civil rights are exactly the type of suits for which Rule 23(b)(2) was designed.  *See Comer v. Cisneros,* 37 F.3d. 775, 796 (2d Cir. 1994) (race discrimination case); *Arnold,* 158 F.R.D. at 452 (disability discrimination case).  "[D]iscrimination cases for injunctions against state or local officials are the 'paradigm' of [Rule 23(b)(2)] cases."  *Comer,* 37 F.3d. at 796; *see also Holmes v. Continental Can Co.,* 706 F.2d 1144, 1155 (11th Cir. 1983) ("Subsection (b)(2) was 'intended primarily to facilitate civil rights class actions,

where the class representatives sought broad injunctive relief against discriminatory practices.'") (citation omitted); *Access Now v. Ambulatory Surgery Center Group, Ltd.,* 197 F.R.D. 522, 524 n. 1 (S.D. Fla. 2000) (citing numerous decisions certifying disability discrimination claims for injunctive relief).

To qualify, class members need only allege a pattern or practice that is generally applicable to the class as a whole. *See Walters*,145 F.3d at 1047; *O'Connor v. Boeing North American, Inc.*, 197 F.R.D. 404, 412 (C.D.Cal. 2000) (noting the Ninth Circuit has refused to read a "cohesiveness" requirement into Rule 23(b)(2)). For these reasons, courts have repeatedly accorded Rule 23(b)(2) class treatment to equal access claims brought under the ADA. *See, inter alia, Access Now v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522, 524, fn. 1 (S.D. Fla. 2000) (citing numerous such recent decisions).

This action is also appropriate under Rule 23(b)(2), because class actions for declaratory or injunctive relief help to avoid mootness and facilitate enforcement of judgments.  *See generally,* 2 *Newber*g at § 5:4.  Absent certification of classes with unknown future members, enforcement problems could follow.  *See, e.g., Lynch v. Rank*, 604 F. Supp. 30, 38-39 (N.D. Cal. 1984) (holding that equity favors certifying nationwide class). Because Defendants' alleged conduct is applicable to the proposed class, making declaratory and injunctive relief appropriate as to the class as a whole, Mr. Sengupta has satisfied the requirements of Rule 23(b)(2).

## C.    Class Notice is Not Required at This Time

The notice requirements found in Rule 23(c)(2) are inapplicable to Rule 23(b)(2) class actions.  Fed. R. Civ. P. 23(d); *see Elliot v. Weinberger*, 564 F.2d 1219, 1228 (9th Cir. 1977), *aff'd in relevant part, rev'd in part*, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979).  *Accord., Navarro-Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1336-37 (1st Cir. 1991); 3 Newberg at § 8.05 ("[C]lass actions seeking declaratory or injunctive relief under Rule 23(b)(2) are not subject to the individual notice requirements of Rule 23(c)(2).").

Rule 23(c)(2)(A) gives the Court discretionary power to direct appropriate notice to the class.  Such notice is not generally necessary in a Rule 23(b)(2) class action where a named plaintiff is an adequate class representatives with experienced counsel.  *See Elliot, 564 F.2d at 1229* (notice not necessary for nationwide (b)(2) class where name plaintiffs are adequate representatives with experienced counsel); *Stolz v. United Brotherhood of Carpenters*, 620 F.Supp. 396, 408 (D. Nev. 1985) (notice unnecessary for (b)(2) class where named plaintiffs are adequate representatives).  Moreover, because absent class members cannot opt out of a Rule 23(b)(2) class, the underlying reasons for notice in a (b)(3) class are not at issue in this case.  *See Elliot*, 564 F.2d at 1229 n.14.

Because Mr. Sengupta is an adequate class representative represented by experienced counsel, there is no need for notice to be given before the proposed class is certified.  Accordingly, Mr. Sengupta respectfully requests that this Court exercise its discretion to certify the class without requiring any notice to absent class members, at least at this stage of the litigation.

## IV.     Conclusion

For the above reasons, Mr. Sengupta respectfully requests that the Court grant this motion in its entirety.

DATED: December 21, 2009          DISABILITY RIGHTS LEGAL CENTER

SCHONBRUN, DESIMONE, SEPLOW, HARRIS & HOFFMAN

By: _____/s/_____

MATTHEW STRUGAR
Attorneys for Plaintiff