WILMER J. HARRIS, State Bar No. 150407
SAMI N. KHADDER, State Bar No. 232216
SCHONBRUN, DESIMONE, SEPLOW, HARRIS & HOFFMAN
715 Fremont Avenue, Suite A,
South Pasadena  CA  91030
Telephone:  (626) 441-4129
Facsimile:   (626) 449-4417
wharris@sdshhlaw.com
skhadder@sdshhlaw.com

Paula D. Pearlman, State Bar No. 109038
Shawna L. Parks, State Bar No. 208301
Matthew Strugar, State Bar No. 232951
DISABILITY RIGHTS LEGAL CENTER
919 Albany Street
Los Angeles, CA 90015
Telephone: (213) 736-1031
Facsimile: (213) 736-1428
paula.pearlman@lls.edu
shawna.parks@lls.edu
matthew.strugar@lls.edu

Attorneys for Plaintiffs
RICKY SENGUPTA, individually, and on
behalf of the class of similarly situated individuals

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY SENGUPTA, individually, and on behalf of the class of similarly situated individuals,<br><br>PLAINTIFFS,<br><br>vs.<br><br>CITY OF MONROVIA, a public entity; CITY OF MONROVIA POLICE DEPARTMENT, a public entity; and DOES 1 through 10, individuals sued in their individual capacities, inclusive,<br><br>DEFENDANTS. | Case No. CV 09-0795 ABC (SJHx)<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR INTERIM ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 12, 2010<br>Time: 10:00 a.m.<br>Courtroom:  680<br><br>Judge:  Hon. Audrey B. Collins |

# **TABLE OF CONTENTS**

I.   Introduction ...................................................................................2

II.  Statement of Facts ........................................................................2

    A.   Prior to this Case Monrovia Police Department Did Not Have a Policy regarding Effective Communication, and Failed to Ensure Effective Communication for the Named Plaintiff in this Action ...................2

    B.   Plaintiff Made Multiple Efforts to Resolve His Dispute Before Filing This Lawsuit ...............................................................................3

    C.   After Plaintiff Filed His Lawsuit, Defendants Enacted a Policy to Provide Effective Communication ..............................................3

III.  Argument ......................................................................................5

    A.   California Code of Civil Procedure Section 1021.5 Authorizes an Award of Attorney Fees to Successful Litigants Benefitting Others Where the Litigant's Actions Were a Catalyst Leading to Remedial Measures ....................................................................................5

    B.   Plaintiff Meets the Requirements for an Award of Attorney's Fees under the Catalyst Theory ..........................................................7

        1.   Plaintiff Tried to Settle This Dispute Directly with Defendants Before Bringing this Class Action ...........................................7

        2.   Plaintiff's Lawsuit is Meritorious ...............................................7

        3.   This Lawsuit was a Catalyst in Motivating Defendants to Enact Their Effective Communication Policy ......................................9

    C.   Plaintiff Meets the Requirements for an Award of Attorneys' Fees under C.C.P. Section 1021.5 ....................................................11

        1.   This Action Resulted in Enforcement of Important Rights Affecting the Public Interest .................................................................11

        2.   This Action Conferred a Significant Benefit on a Large Class of Persons .................................................................................12

        3.   The Necessity and Financial Burden of this Private Action Favor the Award of Fees, which Should Not Be Paid Out of the Recovery to the Named Plaintiff .......................................................................14

    D.   Amount of Attorneys' Fees Sought by Plaintiff is Reasonable ....................15

        1.   The Number of Hours Claimed is Reasonable and Well-Documented ......17

      a.  Plaintiff's Counsel Pursued this Case Efficiently and the Hours Claimed are Reasonable....………………..………………..   17

      b.  Plaintiff's Counsel Has Provided Detailed Documentation of Fees……………………....………………..…………..……18

  2.    The Hourly Rates Claimed Are Reasonable and Comparable to Other Local Attorneys' Rates ......................................................18

    1 Wilmer Harris ........................................................................19

    2 Matthew Strugar. ..................................................................20

    3 Sage Reeves ..........................................................................21

    4 Shawna L. Parks ...................................................................21

    5 Sami Khadder ........................................................................22

    6 Support Staff and Law Clerks ...............................................22

IV.  Conclusion ......................................................................................22

# CASES

*Blum v. Stenson*, 465 U.S. 886, 895 (1984) ............................................................ 18

*Californians for Responsible Toxics Management v. Kizer*, 211 Cal.App.3d 961,
    968 (1st Dist. 1989)............................................................................................ 10

*Chisholm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing 28 C.F.R.
    §35.160(a)).......................................................................................................... 8

*City of Riverside v. Rivera*, 477 U.S. 561, 570-73 (1986) ....................................... 16

*Dennis v. Chang*, 611 F.2d 1302, 1308-09 (9th Cir. 1980) ..................................... 18

*Folsom v. Butte County Ass'n of Gov'ts* 32 Cal.3d 668, 684 (1982)..................... 6, 13

*Godinez v. Shwartzenegger*, 132 Cal.App.4th 73, 89 (2d Dist. 2005)...................... 6

*Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (1987)........................................ 6

*Graham*, 34 Cal 4th at 566 (*quoting Folsom v. Butte County Ass'n of Gov'ts*, 32
    Cal.3d 668, 685 (1982))............................................................................ 6, 7, 11

*Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1114 (9th Cir.
    1987) .................................................................................................................. 11

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ........................................... 15, 16, 18

*Hogar Dulce Hogar v. Community Dev. Comm'n*, 157 Cal.App.4th 1358, 1367
    (4th Dist. 2007) ................................................................................................. 10

*In re Marriage of Carney*, 24 Cal. 3d 725, 740-41 (Cal. 1979)............................... 11

*Lauderdale, et al., v. City of Long Beach, et al.*, 08-cv-00979 ABC (JWJx) ............. 20

*Los Angeles Police Protective League v. City of Los Angeles,* 188 Cal.App.3d 1,
    10 (2d Dist. 1986) ............................................................................................ 15

*Margolin v. Regional Planning Com.,* 134 Cal. App. 3d 999, 1004 (Cal. App. 2d
    Dist. 1982)......................................................................................................... 19

*Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)......................................................... 19

*Pa. v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986)............ 16

*People ex rel. Deukmejian v. CHE, Inc.* (1983) 150 Cal. App. 3d 123, 135 ............................... 12

*Perdue v.* Kenny, __ U.S. ___, 2010 U.S. LEXIS 3481, *16-17 (2010) ...................................... 16

*Perkins v. Mobile Housing Board*, 847 F.2d 735 (11th Cir. 1988)......................................... 17, 18

*Riverside County Department of Mental Health v. A.S., et al.*, 08-cv-00503 ............................. 20

*San Bernardino Valley Audubon Soc'y v. County of San Bernardino*, 155 Cal.
    App. 3d 738, 755 (1984) ........................................................................................ 16

*Serrano v. Unruh* ("*Serrano IV*"), 32 Cal. 3d 621, 638 (1982) ................................. 15, 16, 17, 19

*Sokolow v. County of San Mateo*, 213 Cal.App.3d 231, 246 (1st Dist. 1989)............................. 14

*Weber v. Langholz*, 39 Cal. App. 4th 1578, 1586 (Cal. App. 2d Dist. 1995) .............................. 18

*Woodland Hills Residents Ass'n v. City Council*, 23 Cal.3d 917, 938 (1979)...................... passim

## STATUTES

Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132).................................................. 9

## REGULATIONS

28 C.F.R. § 35.160(b)(l).............................................................................................................. 8

28 C.F.R. 35.130(f) ..................................................................................................................... 4

## STATE CODES

9 Cal. Code of Regulations § 10872(c).......................................................................................... 7

California Code of Civil Procedure §1021.5 .......................................................... 1, 5, 11, 12, 14

California Disabled Persons Act (Civil Code §54.1)................................................................. 6, 8

California Government Code §11135 ......................................................................................... 6, 8

Unruh Civil Rights Act (Civil Code §51 *et seq.*).................................................................... 6, 15

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on July 12, 2010, at 10:00 a.m., or as soon thereafter as counsel may be heard in the courtroom of the Honorable Audrey B. Collins, Chief Judge, at the Edward R. Roybal Federal Building, 255 East Temple Street, Los Angeles, CA 90012, Plaintiff Ricky Sengupta will and does hereby move for an order granting Plaintiff's Motion for Interim Attorneys' Fees for fees incurred through the date at which Defendant's implemented a formal policy for providing effective communication to individuals who are deaf or hard of hearing.

This motion is made following a number of conferences of counsel pursuant to L.R. 7-3 which took place, *inter alia*, on May 14, 21, 25 & 26, 2010. As the successful party resulting in the enforcement of an important right affecting the public interest, Plaintiff Ricky Sengupta respectfully requests reasonable fees as set forth below pursuant to California Code of Civil Procedure Section 1021.5. This motion is based upon Plaintiff's allegations in his Complaint, this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Declarations of Shawna L. Parks, Wilmer Harris, Rick Sengupta, Barrett S. Litt, Laurence W. Paradis, Robert Mann, and the exhibits thereto, files and records of this action, and such other evidence and authorities as may be presented to the Court in connection with the briefing or hearing of this motion.

DATED: June 7, 2010          SCHONBRUN, DESIMONE, SEPLOW, HARRIS & HOFFMAN

DISABILITY RIGHTS LEGAL CENTER

By:_____/s/_____

Matthew Strugar
Attorneys for Plaintiffs

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   Introduction

This class action arises from the City of Monrovia Police Department's ("MPD") failure to provide sign language interpreters to individuals who are deaf or hard of hearing.  At the time of their interaction with Plaintiff, the MPD did not have any written policy with respect to communicating with deaf or hard of hearing individuals.  In November of 2009, more than nine months after Plaintiff initiated this action, the MPD instituted a written effective communication policy.

This lawsuit clearly was a catalyst for the relief. Accordingly, by this motion, Plaintiff seeks an award of attorneys fees based on the substantial benefits achieved for the thousands of individuals who compose the Plaintiff class.

Plaintiff seeks an award of reasonable fees through November 23, 2009—the date at which Defendants' implemented their effective communication policy. Plaintiff's attorneys' fees through November 23, 2009 are $ 93,451.50.

## II.   Statement of Facts

### A. Prior to this Case Monrovia Police Department Did Not Have a Policy regarding Effective Communication, and Failed to Ensure Effective Communication for the Named Plaintiff in this Action.

Plaintiff is deaf and primarily communicates through American Sign Language.  *See* Declaration of Rick Sengupta ("Sengupta Decl.") at ¶ 2.  On the night of February 7, 2008, Monrovia Police Department ("MPD") officers pulled Plaintiff over, searched his vehicle, handcuffed him, placed him under arrest, booked him and interrogated him.  *Id*. at ¶¶ 4-13.   At each step in his interaction with the MPD, from his initial arrest through to his interrogation, Plaintiff made clear that he was deaf and repeatedly requested a sign language interpreter to communicate with the MPD officers.  *Id*. at ¶¶ 4, 5, 7, 9 11-13.  During the entirety of his interaction with the MPD, and despite his repeated requests, Plaintiff was

never provided a sign language interpreter or any other auxiliary aid to communicate with the officers. *Id.* at ¶¶ 4, 5, 7, 9 11-13, 16-19.

In February of 2008, the Monrovia Police Department had no formal policy for providing effective communication to individuals who are deaf or hard of hearing. *See infra* Section II.C.

## B. Plaintiff Made Multiple Efforts to Resolve His Dispute Before Filing This Lawsuit.

In June 2008, before filing suit, Plaintiff sent a detailed tort claim letter to Defendant. *See* Declaration of Shawna L. Parks ("Parks Decl.") at ¶ 18. He received no response to that demand letter. *Id.* Then, in December 2008, Plaintiff sent Defendants a detailed demand letter explaining Plaintiff's factual and legal claims, demanding, *inter alia*, that Defendants establish an effective communication policy to prevent discrimination against people who are deaf or hard of hearing. *Id.* at ¶ 19. Plaintiff received no response to the demand letter. *Id.*

## C. After Plaintiff Filed His Lawsuit, Defendants Enacted a Policy to Provide Effective Communication.

On February 8, 2009, after his attempts at pre-litigation resolution were rejected or ignored, Mr. Sengupta filed this class action on his own behalf and on behalf of all persons who are deaf of hard of hearing who have interacted, currently interact, or will interact with the MPD and who were denied, are denied, or will be denied effective communication or necessary auxiliary aids.

On August 13, 2009, before either side had undertaken significant discovery, Plaintiff's counsel again reached out to Defendants to explore the possibility of settlement without protracted litigation and before either side incurred substantial litigation costs. *See* Letter from Matthew Strugar to Steven Rothans, Exh. I to Parks Decl. Plaintiff's August 13th letter laid out in detail the injunctive relief Plaintiff seeks, including the components of a policy on effective communication.

*Id*. at 1-2.  Defendants provided no response to Plaintiff's August 13th letter and, as a result, litigation proceeded.  Parks. Decl. at ¶ 20.

On November 23, 2009, more than nine months into this litigation, Defendants created a policy on effective communication. *See* Policy Section 370— Hearing Impaired/Disabled Communication, Exh. Q to Parks Decl.  This policy requires, *inter alia*, MPD officers to "make every reasonable effort to provide meaningful and timely assistance to disabled individuals through a variety of services, where available."  *Id*. at § 370.3.  The policy also provides for training for police officers on achieving effective communications with individuals who are deaf or hard of hearing. *Id.* at § 370.5.

While not without its problems, Defendants' effective communication policy adopted many aspects of the injunctive relief Plaintiff seeks. Defendants' policy requires officers give primary consideration to a deaf or hard of hearing individual's preferred method of communication. *See* Policy Section 370 at § 370.3.  The policy also informs officers of various resources available to them to achieve effective communication, and has specific guidance for encounters in the field as well as custodial interrogations and booking.[1] *Id*. at §§ 370.3.1, 370.4.2-3.

Although Defendants contend they had a policy on effective communication prior to November 2009, there is no evidence of any such policy, and Defendants have been unable to produce any. Indeed, Defendants' response in this regard appears to be a thinly veiled attempt to avoid the consequences of this lawsuit. In

---

[1]     Unfortunately, by unilaterally adopting a policy, Defendants policy fails to address all of Defendants' legal obligations. For instance, the new policy suggests to officers that individuals can pay for their auxiliary aids and services, when the law is clear that public entities may not charge for such services. *See* 28 C.F.R. 35.130(f) (public entity may not place a surcharge for cost of providing auxiliary aids and services). Additionally, the policy is ambiguous regarding whether, when, and how any particular auxiliary aid, including interpreters, can or should be utilized. Despite these current flaws in the policy it nevertheless represents a significant change in Defendants' behavior as a result of this case.

response to the requested production of documents reflecting any policy for effective communication in place before November 2009, Defendants have repeatedly stated they were unable to locate any such documents. *See* Defendants' Response to Request for Production of Documents, attached to Parks Decl. as Exh. J at 2:3-5, 2:26-3:2.  This response comports with MPD's response to a public records act request issued by Plaintiff prior to initiating suit. *See* Public Records Act Request to Monrovia Police Department, Exh. K to Parks Decl.  Defendants contend that prior to November 2009 they had an informal "common sense" policy for providing effective communication that was communicated through academy training and word of mouth.  *See* Excerpts of Deposition Transcript of Lisa Cindrich, attached to Parks Decl. at Ex. L at 38:6-21; Excerpts of Deposition Transcript of Yolanda Gutierrez, attached to Parks Decl. at Ex. M at 41:17-25; and Excerpts of Deposition Transcript of Anisa Ortiz, attached to Parks Decl. at Ex. N at 19: 3-23.

Defendants clearly had no formal policy for providing effective communications to people who are deaf or hard of hearing prior to the instant lawsuit.  Defendants' newly enacted policy comes only after Plaintiff's repeated attempts to have such a policy enacted, both before and since filing his lawsuit.

**III.   Argument**

**A. California Code of Civil Procedure Section 1021.5 Authorizes an Award of Attorneys Fees to Successful Litigants Benefitting Others Where the Litigant's Actions Were a Catalyst Leading to Remedial Measures.**

The Private Attorney General Doctrine, codified in California Code of Civil Procedure Section 1021.5, functions as an exception to the general rule that litigants bear their own attorney fees. Under this statute, the Court may award attorneys' fees to the:

> successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on . . . a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

C.C.P. §1021.5.

California law takes a practical approach to the definition of a successful party for the purposes of attorneys' fees, focusing on "the impact of the action" rather than "the manner of its resolution." *Graham*, 34 Cal 4th at 566 (*quoting Folsom v. Butte County Ass'n of Gov'ts*, 32 Cal.3d 668, 685 (1982)). As a result, an award of attorneys' fees is available where a plaintiff's lawsuit was a catalyst that motivated a defendant to provide some of the relief sought by the plaintiff, even where no judgment or settlement agreement compels such remedial action. *Godinez v. Shwartzenegger*, 132 Cal.App.4th 73, 89 (2d Dist. 2005). In 2004, the catalyst theory was reaffirmed by the California Supreme Court in *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553 (1987). *Graham* added two additional requirements to those laid out in C.C.P. §1021.5: (1) a prelitigation demand requirement and (2) a clarified merits requirement.

In addition to his federal claims, Plaintiff brought multiple claims under California law prohibiting discrimination against people with disabilities, including California Government Code §11135, the Unruh Civil Rights Act (Civil Code §51 *et seq*.), and the California Disabled Persons Act (Civil Code §54.1). Each of these statutes prohibits the kind of discrimination Plaintiff encountered. In fact, regulations implementing California Government Code §11135 specifically require recipient of state financial assistance "to take appropriate steps to ensure that communications … are available to persons with impaired … hearing." 9 Cal.

Code of Regulations § 10872(c).  Each of Plaintiff's state law causes of action allow for fee-shifting to a prevailing Plaintiff.

As demonstrated below, Plaintiff satisfies the requirements of both the catalyst theory and C.C.P. §1021.5.

**B.  Plaintiff Meets the Requirements for an Award of Attorneys' Fees under the Catalyst Theory.**

**1.  Plaintiff Tried to Settle This Dispute Directly with Defendants Before Bringing this Class Action.**

In order to prevail on an attorneys' fees motion under the catalyst theory, a plaintiff must have "notif[ied] the defendant of its grievances and proposed remedies and give[n] the defendant the opportunity to meet its demands within a reasonable time" prior to filing suit.  *Graham*, 34 Cal.4th at 577.  This prelitigation demand does not need to have been made by counsel, and lengthy pre-filing negotiations are not required.  *Id.*

Here, Defendants had ample notice of Plaintiff's grievances and proposed remedies prior to the filing of this lawsuit.  As early as June 2008, Plaintiff sent a detailed tort claim letter to Defendants.  *See* Parks Decl. ¶ 18 and Exh. G.  Again, in December 2008, Plaintiff sent Defendants a detailed letter demanding, *inter alia*, that Defendants establish an effective communication policy to prevent discrimination against people who are deaf or hard of hearing.  *See* Parks Decl. ¶ 19 and Exh. H.  Defendants failed to respond in any way to the demand letter, compelling Plaintiff to file this lawsuit on February 8, 2009.

**2.  Plaintiff's Lawsuit is Meritorious.**

A finding that the underlying lawsuit is not "frivolous, unreasonable, or groundless" is required before a court awards attorneys' fees pursuant to the catalyst theory. *Graham*, 34 Cal.4th at 575.  A court may not award attorneys fees to plaintiffs bringing mere nuisance suits, and must conduct "an abbreviated but meaningful review of the merits" in order to screen out such suits.  *Id.* at 576.

Where a case has been pending for some time, the underlying facts of the case will generally have been put before the court in the course of litigation, and the court may base its finding on those facts. *See id.* When a defendant has voluntarily provided relief early in the litigation, as is the case here, the factual background "may generally be established during the attorney fee proceeding by declarations, or, at the discretion of the trial court, by an abbreviated evidentiary hearing." *Id.*

As set forth in the attached declarations, the facts of this case demonstrate that this lawsuit is no nuisance suit. It is clear that Defendants violated state and federal disability rights laws by failing to provide effective communication with Mr. Sengupta and failing to reasonably accommodate his disability. The ADA "require[s] public entities to take 'appropriate steps' to ensure that communications with a disabled person is as effective as communications with others." *Chisholm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing 28 C.F.R. §35.160(a)). The Regulations also require that "where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity," a public entity must provide "appropriate auxiliary aids and services." 28 C.F.R. § 35.160(b)(l). The Regulations further recognize that the individual with a disability knows best what auxiliary aid or service is appropriate: "[i]n determining what type of auxiliary aid and service is necessary, a public entity shall give primary consideration to the requests of the individual with disabilities." *Id*. at 35.160(b)(2).

Similarly, a violation of the ADA constitutes a violation of Plaintiff's state law claims. Cal. Civ. Code, section 54.1, subd. (d) ("violation of the right of an individual under the Americans with Disabilities Act of 1990 [ ] also constitutes a violation of this section, and nothing in this section shall be construed to limit the access of any person in violation of that act."); Cal. Gov. Code, section 11135, subd. (b) ("With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions

contained in Section 202 of the Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions."); Cal. Civ. Code, section 51, subd. (f) ("A violation of the right of any individual under the Americans with Disabilities Act of 1990 [ ] shall also constitute a violation of this section.").

Mr. Sengupta was pulled over by police officers, searched, handcuffed, arrested, taken into custody, booked, and confined in a holding cell. Defendants never once offered Mr. Sengupta an American Sign Language interpreter or other means of effective communication. This was despite Mr. Sengupta's repeated requests for an interpreter: he wrote the word "Interpreter" on a piece of paper and pointed to it after he was frisked and ordered to sit on the ground; again after his car was searched; and twice more when officers attempted to interrogate him in custody.

Defendants' liability under state and federal disability rights laws is clear. There is nothing "frivolous, unreasonable, or groundless" about this suit – Plaintiff is simply asking Defendants to be held accountable for failing to follow well-established law.

> ### 3.   This Lawsuit was a Catalyst in Motivating Defendants to Enact Their Effective Communication Policy.

There is no question that Defendants created and implemented a policy regarding effective communication with people who are deaf as a result of this lawsuit. The record is clear that, prior to November 2009, Defendants had no such policy in place. Defendants have not been able to produce any document referencing an effective communication policy in existence prior to that date. Both before and during the course of this lawsuit, Plaintiff has demanded that

Defendants implement such a policy.  Plaintiff's December 2008 demand letter specifically requested that Defendants establish an effective communication policy to prevent discrimination against people who are deaf or hard of hearing. *See* Parks Decl. ¶ 19 and Exh. H. On August 13, 2009, Plaintiff sent Defendants a letter that laid out in detail the components of a policy on effective communication.  In November 2009, Defendants took action and implemented a policy for effective communication with people who are deaf or hard of hearing. *See* Parks Decl. ¶ 20 and Exh. I. Thus, while the laws at issue in this action have been in place for decades, Defendant finally decided to take action on the issue of effective communication months after Plaintiff filed suit.  The only reasonable inference that can be made from these facts is that Plaintiff's lawsuit was a catalyst which motivated Defendants to establish this policy.

California law permits courts to draw logical inferences from the chronology of events.  As one California appellate court explained, "[W]hen action is taken by the defendant after plaintiff's lawsuit is filed, the chronology of events may permit the inference that the two events are causally related." *Californians for Responsible Toxics Management v. Kizer*, 211 Cal.App.3d 961, 968 (1st Dist. 1989).  *See also Hogar Dulce Hogar v. Community Dev. Comm'n*, 157 Cal.App.4th 1358, 1367 (4th Dist. 2007) ("Given this chronology of events, the trial court could reasonably conclude that overall Hogar's litigation was successful.").

Here, the chronology of events demonstrates that Plaintiff's lawsuit was a catalyst: Plaintiff asked for the establishment of an effective communication policy that would prevent discrimination against people who are deaf or hard of hearing, filed this lawsuit, then reiterated the request with additional detail regarding the components of such a policy.  Defendants' subsequent establishment of a policy for effective communication with people who are deaf or hard of hearing can only

be interpreted as a response to these steps.  This lawsuit was the catalyst for Defendants' remedial action of implementing an effective communication policy.

### C. Plaintiff Meets the Requirements for an Award of Attorneys' Fees under C.C.P. §1021.5.

In addition to meeting the catalyst theory requirements set forth in *Graham*, Plaintiff must show that he has met the elements of California Code of Civil Procedure §1021.5: that the action resulted in enforcement of important rights affecting the public interest; that the action conferred a significant benefit on a large class of persons; and that the necessity and financial burden of this private action favor the award of fees, which should not be paid out of the recovery to the named plaintiff.  Each of the C.C.P. §1021.5 requirements are met here.

### 1.   This Action Resulted in Enforcement of Important Rights Affecting the Public Interest.

The California Supreme Court has held that, when evaluating whether a fee award under C.C.P. §1021.5 is appropriate, a trial court "must realistically assess the litigation and determine, from a practical perspective," whether an important right is at stake in the case.  *Woodland Hills Residents Ass'n v. City Council*, 23 Cal.3d 917, 938 (1979).  The category of important rights is not confined to any particular field: the right to be free from racial discrimination, the rights of mental patients, and enforcement of environmental protection laws have all been held to be important in this context.  *Id.* at 935-936.

The right to be free from discrimination based on disability is one of the most fundamental civil rights Americans have.  California in particular has repeatedly emphasized a strong antidiscrimination policy regarding people with disabilities. *See, e.g., In re Marriage of Carney*, 24 Cal. 3d 725, 740-41 (Cal. 1979) (compiling California's extensive legislative efforts to eliminate discrimination against people with disabilities); *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1114 (9th Cir. 1987) (recognizing "California's stated policy

to achieve ... the total integration of handicapped persons into the mainstream of society.") (internal quotation omitted); *People ex rel. Deukmejian v. CHE, Inc.* (1983) 150 Cal. App. 3d 123, 135 (recognizing California's "commendable goal of total integration" of people with disabilities).

The importance of this right can hardly have a better demonstration than the facts of this case: because of his disability, a man was denied the ability to understand what was happening – or why – when he was stopped by the police, searched, handcuffed, taken into police custody, and confined to a cell.  Likewise, because of his disability, he was denied the ability to explain himself, to ask for a lawyer, or to prevent his car from being searched.  The right to be free from discrimination when there is a need to communicate with government officials is of fundamental importance, and never more so when government officials are exercising the power to search, detain, and confine a person.  The public has a vital interest, expressed in the disability rights laws violated by Defendants, in eliminating discrimination against people with disabilities, particularly by government actors.

### 2.    This Action Conferred a Significant Benefit on a Large Class of Persons.

California Code of Civil Procedure §1021.5 next requires that a "significant benefit" be conferred on "a large class of persons."  The statute provides that the benefit conferred may be "pecuniary or nonpecuniary."  As the California Supreme Court explained in *Woodland Hills Residents Ass'n*, 23 Cal.3d at 939, the statute "recognizes that in many cases the important gains or contributions rendered by public interest litigation will be reflected in nonmonetary advances."

The adoption of a policy for effective communication with people who are deaf and hard of hearing will be a significant benefit to all people who are deaf of hard of hearing who will interact with the Monrovia Police Department.  Police officers perform a wide range of functions in society and come into contact with

members of the public from all walks of life throughout the day.  Often, these interactions come during a critical time in a person's life – when they are a victim or witness of a crime, are in physical distress, or are suspected of committing a crime.  The ability to effectively communicate with members of the Monrovia Police Department during such times is of substantial benefit to anyone who is deaf or hard of hearing.  Again, Mr. Sengupta's case is a dramatic illustration of this: had he been able to effectively communicate with Defendants, he could have exercised his Constitutional rights regarding the search of his car and the officers' attempts to interrogate him.  Defendants could have explained to him why he was being arrested and detained, and he could have responded if he had chosen to do so.

The fact that this case has been certified as a class action is further evidence that that the benefits of the relief achieved in this case will benefit a large class of persons.  This Court recognized in certifying the class in this case that at least 1,300 to 1,800 deaf and hard of hearing individuals reside in Monrovia and many thousands more are likely to travel through Monrovia, and are thus subject to MPD's jurisdiction.  *See* Order re: Plaintiff's Motion for Class Certification, Docket No. 47, at 9.

Under the private attorney general doctrine, the significant benefit justifying a fee award under C.C.P. §1021.5 "may be recognized simply from the effectuation of a fundamental constitutional or statutory policy."  *Woodland Hills Residents Ass'n*, 23 Cal.3d at 939.  Where a lawsuit causes defendants to implement a fundamental legislative policy, courts have found that a significant benefit is implicit.  For example, in *Folsom v. Butte County Ass'n of Gov'ts* 32 Cal.3d 668, 684 (1982), the California Supreme Court held that the settlement agreement "vindicated legislative intent and thus benefitted not only those" directly affected by the agreement but "the citizenry as a whole."  Following that holding, a state appellate court held that litigation enforcing the right to equal

protection of the laws and the right to be free from sex discrimination "necessarily confers a 'significant benefit' on society as a whole, as well as on the direct victims of sexual discrimination.  Moreover, it will deter other governmental entities from undertaking similar activities."  *Sokolow v. County of San Mateo*, 213 Cal.App.3d 231, 246 (1st Dist. 1989).

Here, the establishment of a policy for effective communication with people who are deaf or hard of hearing vindicates legislative intent and effectuates the policies behind federal and state disability rights laws.  These laws were established to prevent discrimination against people with disabilities and to ensure that people with disabilities had equal access to government services and programs.  The citizenry as a whole benefits when discrimination against people with disabilities is eliminated – not just because any of us may become disabled in the future and come directly under the protection of these laws – but because all of us benefit from being a part of a discrimination-free society.

### 3.   The Necessity and Financial Burden of this Private Action Favor the Award of Fees, which Should Not Be Paid Out of the Recovery to the Named Plaintiff

Finally, California Code of Civil Procedure §1021.5 requires that the necessity and financial burden of the private action favor the award of attorneys' fees, and that it be in the interest of justice that such fees not be paid out of the recovery to the named plaintiff.  This requirement is met here.

With regard to the element of "necessity" of the private action, the need for private enforcement is clear in cases where an action is brought against a government agency.  *Woodland Hills Residents Ass'n*, 23 Cal.3d at 941.  The California Supreme Court has held that the financial burden of the action favors the award of attorneys' fees "when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter'." *Id.*

Here, the financial burden of bringing this litigation is out of proportion to Plaintiff's individual stake in the case. Plaintiff does not allege any physical injury and stipulated that he experienced only garden variety emotional distress damages. *See* Stipulation re: Emotional Distress Damages of Plaintiff Rick Sengupta, Docket No. 42. The central goal of this case has always been obtaining injunctive relief to prevent further discrimination by the Defendants against individuals who are deaf or hard of hearing. Mr. Sengupta's individual damages pale in comparison to the cost of bringing this case. To date, this case has already involved over 350 hours of attorney time, including opposing a motion to dismiss, moving for class certification, taking six depositions, and responding to and propounding multiple discovery demands.

A California appellate court has held that this element of C.C.P. §1021.5 will be met "except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs." *Los Angeles Police Protective League v. City of Los Angeles,* 188 Cal.App.3d 1, 10 (2d Dist. 1986). The actual litigation fees of this case to date are more than $200,000, and will only continue to rise if the case does not settle at the upcoming settlement conference on June 9. Much of the time Plaintiff's counsel expended was a result of Defendants' failure to take available opportunities to settle the case. It is well settled that a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent . . . in response." *Serrano v. Unruh* ("*Serrano IV*"), 32 Cal. 3d 621, 638 (1982) (citations and internal quotation marks omitted). There is little possibility that Plaintiff's individual damages will equal the actual costs of litigation, let alone exceed them by an substantial margin.

### D. Amount of Attorneys' Fees Sought by Plaintiff is Reasonable

The starting point for computation of attorneys' fees is the "lodestar" arrived at by multiplying the number of hours reasonably expended by the reasonable hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The "resulting

product is *presumed* to be the reasonable fee to which counsel is entitled." *Pa. v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal quotations omitted). *See also Perdue v.* Kenny, __ U.S. ___, 2010 U.S. LEXIS 3481, *16-17 (2010) (describing loderstar method's "several important virtues," as affording a rough approximate of a fee obtained by a paying client, being "readily administrable" and "objective"). Where, as here, a Plaintiff obtained substantial results, the "attorney should recover a fully compensatory fee . . . encompass[ing] all hours reasonably expended on the litigation . . . ." *Hensley*, 461 U.S. at 435.

Under federal law, a "fully compensatory fee" is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and time spent on the case, calculated at private market rates.  It must ensure that attorneys are paid for all the time they devote to the litigation.  It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered.  *See City of Riverside v. Rivera*, 477 U.S. 561, 570-73 (1986) (plurality opinion).

The California Supreme Court similarly has held that courts must calculate the amount of an attorney's fee award so that it provides full compensation for all time reasonably expended in rendering legal services in the case.  *See Serrano IV*, 32 Cal. 3d at 632-34, 639 (1982).  One purpose in calculating the fee award is to provide an amount that will be "likely to entice competent counsel to undertake difficult public interest litigation." *San Bernardino Valley Audubon Soc'y v. County of San Bernardino*, 155 Cal. App. 3d 738, 755 (1984); *see also Woodland Hills Residents Ass'n, Inc. v. City Council*, 23 Cal. 3d 917, 933 (1979) (The "fundamental objective" of certain attorney fee provisions is "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits . . . .").

Using the lodestar formula, Plaintiff is entitled to compensation for the hours of work performed through November 23, 2009 by both attorneys and law clerks,

with each individual's work compensated at a reasonable rate, according to his/her experience and skill.  *See Serrano v. Priest* ("*Serrano III*"), 20 Cal. 3d 25, 48 (1977).  Plaintiff's counsel's lodestar is reasonable because: (a) detailed, contemporaneous records show that counsel expended all hours on negotiation or litigation tasks necessary to attaining relief and (b) counsel's billing rates are comparable to those of attorneys with similar expertise and experience.

### 1.   The Number of Hours Claimed is Reasonable and Well-Documented

#### a.   Plaintiff's Counsel Pursued this Case Efficiently and the Hours Claimed are Reasonable

Counsel's detailed time records demonstrate that this case was pursued efficiently.  The case was staffed throughout this period primarily by Sage Reeves and, after his departure, Matthew Strugar from DRLC and Wilmer Harris at Sconbrun, DeSimone, Seplow, Harris & Hoffman ("SDSHH").  As reflected in the attached time records, Plaintiff's counsel's time during this period consisted of conducting pre-filing legal and factual research and preparing the complaint, opposing Defendants' motion to dismiss and motion to strike, propounding discovery, responding to discovery issued by Defendants, and approximately scheduling and preparing for two 30(b)(6) depositions (which Defendants' unilaterally cancelled and rescheduled on the eve of both depositions). *See* Parks Decl. at ¶¶ 21-23.

All of Plaintiff's counsel's time in this case through November 23, 2009 was merited by the necessities of this case.  *See supra* Section III.  In order to justify a reduction in the lodestar based upon excessive time, Defendants must show that "the time claimed is obviously and convincingly excessive."  *Perkins v. Mobile Housing Board*, 847 F.2d 735 (11th Cir. 1988).  There is no indication here, however, that Plaintiff's counsel's time was excessive.

**b.  Plaintiff's Counsel Has Provided Detailed Documentation of Fees.**

Plaintiff's counsel have provided detailed documentation of fees.  *See* Exhs. A-B to Parks Decl. and Ex. A to Harris Decl. (chart summarizing fees requested as well as detailed time records).  The time records of Plaintiff's counsel are more than adequate to meet the documentation requirements set forth by the Supreme Court, the Ninth Circuit, and California courts.  *See Hensley*, 461 U.S. at 437 n.12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures."); *Dennis v. Chang*, 611 F.2d 1302, 1308-09 (9th Cir. 1980) (finding chronological and detailed time records with no dates sufficient); *Weber v. Langholz*, 39 Cal. App. 4th 1578, 1586 (Cal. App. 2d Dist. 1995) (although fee request did not include time records and billing statements, trial court could evaluate reasonableness of request and make award).  Plaintiff's counsels' records exceed this standard in that they provide detailed descriptions of the work conducted.  *See* Ex. B to Parks Decl; Ex. A to Harris Decl.  Additionally, the declarations and supporting documentation submitted herewith constitute evidence of exactly the type that courts have relied on in numerous fees decisions. *See, e.g., Perkins*, 847 F.2d at 738 ("[S]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case . . . .").

**2.      The Hourly Rates Claimed Are Reasonable and Comparable to Other Local Attorneys' Rates.**

Both the California Supreme Court and the United States Supreme Court have clearly held that fee awards to public interest attorneys who do not charge their clients (such as DRLC) must be based on the prevailing billing rates of attorneys in private practice with similar skills and experience.  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (legislative history of civil rights statutes

requires that hourly rates for public interest attorneys equal prevailing private market rates); *Serrano IV*, 32 Cal. 3d at 640-44 (1982) (same).

Plaintiff's counsel request compensation for the work in this case at their regular hourly rates for the year 2010. For the fee award to be reasonable, it must be based on current, rather than historic, hourly rates for Plaintiff's attorneys. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) (court may account for delay in payment through use of current rates). These rates are reasonable as measured by the rates charged by attorneys of comparable experience and skill in the Los Angeles area. *See Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1004 (Cal. App. 2d Dist. 1982) (The reasonable hourly rate is that prevailing in the community for similar work. . . . [A] reasonable hourly rate is the product of a multiplicity of factors . . . the level of skill necessary, time limitations, the amount to be obtained in the litigation, the attorney's reputation, and the undesirability of the case."). These rates are reasonable as measured by the rates charged by attorneys of comparable experience and skill in the Los Angeles area. Plaintiff has provided representative declarations of local attorneys which establish that rates for plaintiff's counsel are well within the prevailing hourly rates of other civil rights litigation firms. *See* Decls. of Barrett S. Litt, Robert Mann and Laurence W. Paradis filed herewith.

For example, both O'Melveny & Meyers and Gibson Dunn & Crutcher both charge rates higher than those requested here. *See* Litt Decl. ¶21 & 23, and Exhs. D and E. In 2008 O'Melveny & Meyers charged, *inter alia,* $450 per hour for a 2005 associate and $675 for a 1994 partner. *See* Litt Decl. ¶21. In an action brought with Public Counsel, a prominent public interest law firm in Los Angeles, Gibson's rates – including $525 per hour for a 2004 graduate and $495 for 2005 graduates – were found not to be above the community norm for similar work. *See* Litt Decl. ¶23, and Exh. D at 14-15. In addition, Plaintiff's Counsel's rates are considerably lower than those charged by Disability Rights Advocates ("DRA"), a

nonprofit that engages in similar work.  DRA charges $475 for 2005 graduates and $535 for 2003 graduates. *See* Paradis Decl. Exh. A.  Moreover, as the 2008 National Law Journal demonstrates, at Manatt, Phelps & Phillips, the 2008 hourly rate for partners was between $495 and $850, and rates for associates between $290 and 505.  *See* Litt Decl. ¶24, and Ex. F.

This Court recently approved DRLC's attorneys' rates in *Lauderdale, et al., v. City of Long Beach, et al.*, 08-cv-00979 ABC (JWJx), Order re: Attorneys' Fees and Costs, attached as Exhibit O to Parks Decl., at 9-13, and *Riverside County Department of Mental Health v. A.S., et al.*, 08-cv-00503, Order Granting Motion for Attorneys' Fees and Denying Without Prejudice Motion for Costs, attached as Exhibit P to Parks Decl, at 2-3.

In light of the above, and as set forth below and in the supporting declarations, Plaintiff's counsel's rates are reasonable and well-justified.

## 1.  Wilmer Harris

Wilmer Harris is a partner at SDSHH and has been SDSHH's lead attorney in this matter.  Mr. Harris' currently hourly rate is $625 per hour.  *See* Harris Decl. ¶ 9. Mr. Harris is currently Vice-Chair of the California State Bar Labor & Employment Executive Committee and will serve as Chair of the organization beginning in October 2010. *See id*. ¶ 5.  Mr. Harris is on the Board of Directors of the California Employment Lawyers Association.  *See id*. Mr. Harris is a 1990 Order of the Coif graduate of the UCLA School of Law.  *See id. ¶* 3. He served as law clerk to the Honorable David W. Williams.  *See id.* Mr. Harris has been recognized as a Los Angeles Super Lawyer numerous times.  *See id. ¶* 5. His practice focuses on civil rights, including employment cases, police misconduct cases and class actions.  *See id. ¶* 3.

## 2.  Matthew Strugar

Matthew Strugar is the primary DRLC attorney on the matter, under the direction of DRLC's Legal Director Shawna Parks.  Mr. Strugar bills $400 per

hour is a Staff Attorney with the Civil Rights Litigation Program of the DRLC. *See* Parks Decl. ¶ 16. Mr. Strugar is a 2004 graduate of USC Law School. *See id.* Mr. Strugar's practice focuses on high-impact cases affecting the rights of people with disabilities, including cases involving effective communication, physical access and accommodations, and the rights of people with disabilities in detention facilities. *See* Ex. F to Parks Decl. (Strugar's resume).

### 3. Sage Reeves

Sage Reeves was the primary DRLC attorney on the matter prior to his departure from DRLC in June of 2008. Again, Mr. Reeves work was performed under the supervision of Ms. Parks. *See* Parks. Decl. at ¶ 15. Mr. Reeves bills $475 per hour. *See id.* Mr. Reeves is a 2001 graduate of the University of California, Davis School of Law. *See id.* He was a Registered Legal Services Attorney with the Civil Rights Litigation Program of the Disability Rights Legal Center from May 2008 until June 2009. *See* Ex. F to Parks Decl. (Reeves' resume). Mr. Reeves' practice focused on high-impact cases affecting the rights of people with disabilities, including cases involving effective communication, physical access and accommodations, and the rights of people with disabilities in detention facilities. *See id.* Upon graduation from law school, Mr. Reeves was an associate at Heller Ehrman LLP where his practice focused on complex litigation. After moving to Los Angeles, Mr. Reeves was a Registered Legal Services Attorney at Protection and Advocacy, Inc. (now known as Disability Rights California), where his practice focused on issues affecting the rights of people with disabilities. *See id.*

### 4. Shawna L. Parks

Shawna L. Parks is the Legal Director at the DRLC. *See* Parks Decl. at ¶ 11. Her rate is $525 per hour. *See id.* As the DRLC's Legal Director, Ms. Parks was DRLC's lead lawyer in the case. *See id.* Ms. Parks has worked extensively on high-impact cases affecting the rights of people with disabilities. *See* Ex. D to

Parks Decl. (Parks' resume).  Ms. Parks is a 1999 graduate of Boalt Hall School of Law at U.C. Berkeley.  Ms. Parks is also an Adjunct Professor at Loyola Law School where she teaches Disability Rights and Special Education Law and supervises the DRLC's externship program.  *See id.* at ¶ 12.

### 5.  Sami Khadder

Sami Khadder is an associate at SDSHH.  Mr. Khadder's currently hourly rate is $400 per hour.  *See* Harris Decl. ¶ 11. Mr. Khadder is a 2003 graduate of the George Washington School of Law.  *See id*. ¶ 12. He practiced with Ropers, Majeski for four years before joining the Pasadena office of SDSHH. *See id*. ¶ 11. Mr. Khadder's practice includes employment law cases of all types as well as civil rights prosecutions and class actions.

### 6.  Support Staff and Law Clerks

Both firms employed Law Clerks and Legal Assistants on this matter. *See* Parks. Decl. at ¶ 17 and Harris Decl. at ¶ 13.  DRLC utilizes a rigorous interview program to select highly qualified law students based on their legal research and writing skills.  Parks. Decl. at ¶ 17.  DRLC law clerks bill $165 per hour.  *See id*. SDSHH bills legal assistants at $150 per hour.  *See* Harris Decl. ¶ 14 .

## IV.   Conclusion

For all of the foregoing reasons, Plaintiff's Interim Motion for Attorney Fees should be granted.

DATED:  June 7, 2010              SCHONBRUN, DESIMONE, SEPLOW,

HARRIS & HOFFMAN

DISABILITY RIGHTS LEGAL CENTER

By:_____/s/_____

Matthew Strugar

Attorneys for Plaintiffs